STATE of Wisconsin, Plaintiff-Appellant,

v.

David Allen BRUSKI,
Defendant-Respondent-Petitioner.

Supreme Court

*No. 2005AP1516–CR. Oral argument September 13, 2006.
—Decided February 22, 2007.*

2007 WI 25

(Also reported in 727 N.W.2d 503.)

179

For the defendant-respondent-petitioner there were briefs and oral argument by *Margaret A. Maroney,* assistant state public defender.

For the plaintiff-appellant the cause was argued by *Stephen W. Kleinmaier,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. JON P. WILCOX, J. This is a review of a published court of appeals decision, *State v. Bruski,* 2006 WI App 53, 289 Wis. 2d 704, 711 N.W.2d 679, reversing an order of the Douglas County Circuit Court, Michael T. Lucci, Judge, which granted David Allen Bruski's motion to suppress evidence.

¶ 2. In the course of assisting a vehicle owner locate her keys, a City of Superior police officer searched her vehicle. His search included opening a travel case that contained drug paraphernalia and led to Bruski's arrest. Bruski argues that the warrantless search violated his Fourth Amendment rights. We hold that Bruski lacked standing to assert a Fourth Amendment claim because he failed to prove that he had a reasonable expectation of privacy in either the vehicle in which the police found the travel case or the travel case itself. Accordingly, we affirm the court of appeals.

I

¶ 3. The events relevant to this case commenced with a citizen's call to the City of Superior Police Department on March 3, 2005, regarding a suspicious vehicle and occupant parked behind a residence. Officer James Olson responded to the call.

181

¶ 4. Upon Officer Olson's arrival on the scene at about 8:00 a.m., he found Bruski in the driver's seat of the vehicle. The vehicle was not running. Bruski appeared as though he might be dead. He had a piece of a sandwich in his mouth, with the rest of it in his lap.

¶ 5. After closer inspection, Officer Olson discovered Bruski was merely passed out. Officer Olson shook Bruski and asked him repeatedly to wake up. Although Officer Olson had difficulty understanding Bruski's speech, Bruski finally identified himself and informed Officer Olson that he was waiting for a friend. Bruski had no idea how he had gotten to his current location. He never acknowledged operating the vehicle.

¶ 6. Officer Olson determined that the vehicle Bruski occupied was registered to Margaret Smith. The vehicle had not been reported stolen, but Officer Olson had the police communications center contact Ms. Smith to inform her of the whereabouts of her vehicle. Ms. Smith did not request any action be taken related to the vehicle. She speculated that her daughter Jessica, who had been allowed to use the vehicle, may have allowed a friend to operate it.

¶ 7. A couple of hours later, Ms. Smith became concerned about her daughter and her vehicle. She went to the Superior Police Department. From there, Officer Olson escorted her to the scene where her car was located.

¶ 8. When Officer Olson and Ms. Smith arrived on the scene, Officer Gerald Beauchamp was already there. He had been keeping an eye on Bruski while Officer Olson escorted Ms. Smith. Bruski remained passed out in the driver's seat of the vehicle. As Officer Olson, Officer Beauchamp, and Ms. Smith approached the vehicle, Bruski woke up.

¶ 9. Officer Olson asked Bruski to step out of the vehicle. With Bruski out of the vehicle, Ms. Smith stated that she did not recognize Bruski and had never heard his name. Bruski was asked if he knew Ms. Smith's daughter. He responded that he knew Jessica, but did not know her last name.

¶ 10. Ms. Smith wanted to take possession of her vehicle, but did not have the keys. As Officer Olson, Ms. Smith and Bruski stood near the hood of the vehicle on the driver's side, Ms. Smith became upset and asked Bruski for the keys to her vehicle. Officer Olson asked Bruski if he had the keys for Ms. Smith's vehicle. Bruski said that he did not.

¶ 11. As Officer Olson and Ms. Smith continued asking Bruski about the whereabouts of the keys, Officer Beauchamp opened the front passenger door of Ms. Smith's vehicle and began searching it for the keys. Officer Olson, Ms. Smith, and Bruski remained standing as a group near the driver's door. The group stood in a position where they could see the interior of the vehicle.

¶ 12. Officer Beauchamp searched on the seats, between the seats, in the glove compartment, and in the ashtray. Before looking for the keys, Officer Beauchamp had not asked Ms. Smith for permission to look for the keys in the car. Ms. Smith had neither given nor denied permission for Officer Beauchamp to search her vehicle.

¶ 13. Having not located the keys, Officer Beauchamp then opened a travel case that was in plain view on the floor in front of the front passenger seat. The travel case was approximately ten inches wide, sixteen inches long, and eight inches deep. The case was hard and opaque. It had no identifying information on it. Although both Ms. Smith and Bruski stood in view of

the interior of the vehicle, neither said anything when Officer Beauchamp opened the case.

¶ 14. Officer Beauchamp did not find the keys inside the case. He found a glass smoking pipe, a cigarette box with a green leafy substance that appeared to be marijuana, plastic baggies, weights, a digital scale, and a notebook. Ms. Smith said she had never seen the case before. Officer Olson arrested Bruski.

¶ 15. After placing Bruski under arrest, the officers noticed what appeared to be Jessica's clothes in the back seat. With Jessica's whereabouts unknown, the officers suspected that Jessica may be in the trunk of the vehicle. Officer Beauchamp confirmed with Ms. Smith that he had permission to search the trunk of the vehicle. Nothing illegal was found.

¶ 16. Incident to Bruski's arrest, Officer Olson searched Bruski's person. Officer Olson discovered methamphetamine, a large flip-open knife, Jessica's cell phone, and keys for Ms. Smith's vehicle. As Officer Olson walked Bruski to the squad car after searching Bruski's person, Bruski said, "Just shoot me." Bruski later asked if he could speak with a narcotics agent about sharing information in exchange for making a deal.

¶ 17. The State charged Bruski with possession of methamphetamine, drug paraphernalia, THC, and a concealed weapon. He filed a motion to suppress the evidence found in the travel case and gathered incident to his arrest, arguing that the police violated his Fourth Amendment right against unreasonable searches. The circuit court granted Bruski's motion. According to the circuit court, the evidence from the travel case needed to be suppressed because he had a reasonable expectation of privacy in the travel case and did not give the officers consent to search it. The circuit court also concluded that the evidence gathered subject to his

arrest also needed to be suppressed because Bruski's arrest resulted from an illegal search. The result was the suppression of evidence found in the travel case and on Bruski's person. After the circuit court denied that State's motion to reconsider, the State appealed.

¶ 18. The court of appeals reversed the circuit court. According to the court of appeals, Bruski lacked standing to assert a Fourth Amendment claim because he lacked a reasonable expectation of privacy in either the vehicle or the travel case. The court of appeals also noted that "[w]ithout a reasonable expectation of privacy in the vehicle, he ha[d] no expectation of privacy relative to his travel case as a matter of law, even though he owned the case." *Bruski,* 289 Wis. 2d 704, ¶ 19.

¶ 19. The issue before this court is whether Bruski, who was passed out in another person's vehicle, is entitled to Fourth Amendment protections related to the search of the travel case. Whether an individual had a reasonable expectation of privacy in an area subjected to a search by a government agent is a question of constitutional law, which we review de novo. *State v. Dixon,* 177 Wis. 2d 461, 466–67, 501 N.W.2d 442 (1993). Only clearly erroneous findings of fact underlying the circuit court's determination of whether an individual had a reasonable expectation of privacy will be set aside. *Id.* at 467.

II

¶ 20. In moving to suppress the evidence, Bruski claimed his Fourth Amendment rights had been violated. The Fourth Amendment of the United States Constitution provides that

185

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Bruski, as the proponent of a motion to suppress, has the burden of establishing that his Fourth Amendment rights were violated by the search. *Rawlings v. Kentucky,* 448 U.S. 98, 104 (1980); *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1 (1978).[1]

█

¶ 21. To have a Fourth Amendment claim, the proponent must initially satisfy two requirements. First, the search must have been done by a government agent. *Boyd v. United States,* 116 U.S. 616, 630 (1886). The Fourth Amendment protects citizens from government intrusion. Given that Officer Beauchamp, a government agent, conducted the search, Bruski has satisfied this requirement.

---

[1] Article I, Section 11 of the Wisconsin Constitution, like the Fourth Amendment, guarantees citizens the right to be free from unreasonable searches and seizures. It reads as follows:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

Wis. Const. art. I, § 11. This court generally follows the United States Supreme Court's interpretation of the search and seizure provision of the Fourth Amendment in construing Article I, Section 11 of the Wisconsin Constitution. *State v. Young,* 2006 WI 98, ¶ 30, 294 Wis. 2d 1, 717 N.W.2d 729.

¶ 22. Second, an individual must have standing.[2] *Rakas,* 439 U.S. at 140. There is not a bright-line test for determining when an individual has standing, but standing exists when an individual has a reasonable expectation of privacy. *Id.* at 144. The proponent of a Fourth Amendment claim bears the burden of proving that he or she had a reasonable expectation of privacy. *State v. Whitrock,* 161 Wis. 2d 960, 972, 468 N.W.2d 696 (1991) (citing *Rawlings,* 448 U.S. at 104).[3]

---

[2] Fourth Amendment standing differs from traditional notions of standing. Fourth Amendment standing analysis "focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Rakas v. Illinois,* 439 U.S. 128, 139 (1978). Defining an individual's Fourth Amendment rights "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." *Id.* at 140. Standing, in the context of the Fourth Amendment, refers to a threshold substantive determination, which is distinct from Article III standing.

[3] In his brief, Bruski urged the court to overrule *State v. Callaway,* 106 Wis. 2d 503, 317 N.W.2d 428 (1982), and construe Article I, Section 11 of the Wisconsin Constitution to confer automatic standing to defendants charged with possession of illegal material. In *Callaway,* 106 Wis. 2d at 519–20, this court discontinued its adherence to the automatic standing rule and decided to adopt the reasonable expectation of privacy test set forth in *United States v. Salvucci,* 448 U.S. 83 (1980), to determine a person's standing to make a Fourth Amendment claim. Given our agreement with the United States Supreme Court that " 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted,' " *Rakas,* 439 U.S. at 133–34 (internal citation omitted), we continue to follow the Court's interpretation of the Fourth Amendment when construing Article I, Section 11 of the Wisconsin Constitution.

¶ 23. Whether an individual had a reasonable expectation of privacy in an area subjected to a search depends on two prongs. *Smith v. Maryland,* 442 U.S. 735, 740 (1979); *Dixon,* 177 Wis. 2d at 468. First, whether the individual's conduct exhibited an actual (i.e., subjective) expectation of privacy in the area searched and the item seized. Then, if the individual had the requisite expectation of privacy, courts determine whether such an expectation of privacy was legitimate or justifiable (i.e., one that society is willing to recognize as reasonable).

¶ 24. In considering whether an individual's expectation of privacy constitutes a legitimate or justifiable one, our court has stated that the following factors may be relevant:

> (1) whether the accused had a property interest in the premises; (2) whether the accused is legitimately (lawfully) on the premises; (3) whether the accused had complete dominion and control and the right to exclude others; (4) whether the accused took precautions customarily taken by those seeking privacy; (5) whether the property was put to some private use; (6) whether the claim of privacy is consistent with historical notions of privacy.

*Id.* at 469 (citing *State v. Fillyaw,* 104 Wis. 2d 700, 711 n. 6, 312 N.W.2d 795 (1981)). The list is neither controlling nor exclusive. Rather, courts consider the totality of the circumstances when evaluating the latter prong of the reasonable expectation test.

¶ 25. Related to the vehicle, we conclude that Bruski did not have a reasonable expectation of privacy. His conduct indicates that he did not have an actual expectation of privacy. In his initial conversation with

188

Officer Olson, he indicated that he did not know how he had gotten to his current location. After Ms. Smith and Officer Olson had asked Bruski about the whereabouts of the keys, and Officer Beauchamp entered Ms. Smith's vehicle to search for the keys, Bruski did nothing to indicate that he expected privacy related to the vehicle. There is not any indication from his conduct that he had an actual expectation of privacy in the vehicle.

¶ 26. Even if Bruski did have an actual expectation of privacy, he still would not have a Fourth Amendment claim. The totality of the circumstances does not support Bruski having a legitimate or justifiable expectation of privacy in Ms. Smith's vehicle.

¶ 27. First, Bruski had no property interest in the vehicle. His only connections to the vehicle were that he passed out in it and claimed to know the owner's daughter. The fact that he did not even know Ms. Smith's daughter's last name suggests that he did not have any relationship with the owner of the vehicle that would support a conclusion that he had a property interest in Ms. Smith's vehicle.

¶ 28. Second, Bruski took no precautions customarily associated with those seeking privacy. He did not even know how he had gotten to his current location, let alone taken steps to retain his privacy. Although he argues that parking the car behind a residence constitutes an effort to retain his privacy, this lacks persuasiveness given that he did not even acknowledge being the person to drive the vehicle to that location.

¶ 29. Third, Bruski lacked the right to exclude others from the vehicle. He did not own the vehicle. He did not establish any possessory interest in the vehicle. As mentioned above, but also relevant to this factor, his

only connections to the vehicle were that he passed out in it and claimed to know the owner's daughter. His lack of knowledge about how he got to his current location also undermines his authority to exclude others from the vehicle.

¶ 30. Finally, Bruski's claim of privacy in Ms. Smith's vehicle is not consistent with historical notions of privacy. The *Dixon* court noted the following:

> [S]everal courts have held that a non-owner driver does not have a reasonable expectation of privacy in the interior of a vehicle. In one recurring fact pattern, the accused's relationship to the owner of the vehicle or to the vehicle is too attenuated to allow the court to hold that the accused has a reasonable expectation of privacy.

*Dixon,* 177 Wis. 2d at 472 (citing *United States v. Obregon,* 748 F.2d 1371 (10th Cir. 1984) (accused driving a rented car and not named on the rental agreement; an unrelated third party, not present in the car, arranged the rental of the car; no reasonable expectation of privacy); *United States v. Erickson,* 732 F.2d 788 (10th Cir. 1984) (accused's possession of and authority to fly airplane unexplained; no reasonable expectation of privacy); *United States v. Ospina,* 682 F.Supp. 1182, 1183–85 (D. Utah 1988) (accused claimed permission to drive vehicle rented by another whose surname, address and telephone number accused did not know; no reasonable expectation of privacy); *United States v. Peters,* 791 F.2d 1270, 1280–82 (7th Cir. 1986) (accused, former owner of car, and others, drove car on occasional but not regular basis, with the owner's permission; accused not in possession of car at time of search; no reasonable expectation of privacy); *Missouri v. Gollaher,* 628 S.W.2d 365 (Mo. Ct. App.1982) (accused has no reasonable expectation of privacy when holding

car under statutory lien for debt and not in possession of car at time of search); *New York v. Ayala,* 147 Misc. 2d 278, 557 N.Y.S.2d 236 (1990) (lienholder does not have reasonable expectation of privacy); *State v. Swift,* 105 N.C. App. 550, 414 S.E.2d 64, 68–69 (1992) (non-owner passenger who was to protect car from others has no reasonable expectation of privacy); *Commonwealth v. Freeman,* 295 Pa. Super. Ct. 467, 441 A.2d 1327, 1329–1330 (1982) (accused in possession of stolen car; no legitimate expectation of privacy)).

¶ 31. Accordingly, even if Bruski did have an actual expectation of privacy in Ms. Smith's vehicle, we conclude it was not a legitimate or justifiable one based on the totality of the circumstances in this case. Bruski lacked a reasonable expectation of privacy in Ms. Smith's vehicle.

¶ 32. Bruski argues that he had a reasonable expectation of privacy in his travel case, even if he did not have a reasonable expectation of privacy in Ms. Smith's vehicle. The question of whether an individual may have a reasonable expectation of privacy in personal property found inside a vehicle that he or she does not have a reasonable expectation of privacy in has not been addressed by the United States Supreme Court. It is a matter of first impression in this state.

¶ 33. Jurisdictions that have addressed the issue have reached a wide array of holdings. Some courts have held that an individual that does not have a reasonable expectation of privacy in a vehicle cannot have a reasonable expectation of privacy in personal property found inside the vehicle. *United States v. Wellons,* 32 F.3d 117, 119 (4th Cir. 1994) (holding that the defendant, who was an unauthorized driver of a rental car, did not have a reasonable expectation of privacy in either the car or his luggage); *Obregon,* 748

F.2d at 1375 (holding that the defendant, who was not an authorized driver of a rental car, did not have a reasonable expectation of privacy in the vehicle he was driving or his garment bag that contained clothing and a cardboard box that contained cocaine); *United States v. Hargrove,* 647 F.2d 411, 413 (4th Cir. 1981) (holding that the defendant, who had stolen a vehicle, could not reasonably expect privacy in the vehicle or the personal property found in the vehicle). The holdings of these courts suggest that a bright-line rule exists that would bar an individual from having a reasonable expectation of privacy in personal property found in a vehicle in which he or she lacks a reasonable expectation of privacy.

¶ 34. The court of appeals in this case seemingly followed the bright-line rule rationale of the *Wellons, Obregon,* and *Hargrove* courts, noting that "[w]ithout a reasonable expectation of privacy in the vehicle, [Bruski] ha[d] no expectation of privacy relative to his travel case as a matter of law, even though he owned the case." *Bruski,* 289 Wis. 2d 704, ¶ 19. However, we reject adopting a bright-line rule. The Fourth Amendment does not lend itself to bright-line rules, *see Rakas,* 439 U.S. at 147, and we will not adopt one in this case.

¶ 35. A number of courts have determined whether individuals have had a reasonable expectation of privacy in personal property within vehicles without a bright-line rule. Some of these courts have held that the defendants failed to establish a reasonable expectation of privacy in their personal property found in vehicles in which they did not establish a reasonable expectation of privacy. *United States v. Sanchez,* 943 F.2d 110, 114 (1st Cir. 1991) (holding that a defendant, who got stopped driving a car registered to someone he could not identify by her full name, failed to establish a

192

reasonable expectation of privacy in the car or the area behind a rear panel, where a government agent discovered a kilogram of cocaine); *Gov't of Virgin Islands v. Williams,* 739 F.2d 936, 939 (3d Cir. 1984) (holding that the defendant, who had no property interest in the vehicle, failed to establish a reasonable expectation of privacy in the areas under the seat, inside the torn seat or inside the ripped ceiling); *Meeks v. State,* 692 S.W.2d 504, 510 (Tex. Crim. App. 1985) (holding that a defendant, who was a passenger in a vehicle, failed to establish a reasonable expectation of privacy in the trunk of the vehicle because he did not have a possessory interest in the vehicle or the property seized). Other courts have held that the defendants did have a reasonable expectation of privacy in their personal property, even though they did not have a reasonable expectation of privacy in the vehicle. *United States v. Edwards,* 242 F.3d 928, 936–37 (10th Cir. 2001) (holding that a defendant, who was not an authorized driver of a rental car, did not have standing to challenge the search of the car, but did have a reasonable expectation of privacy in the luggage he owned and stored in the trunk); *United States v. Buchner,* 7 F.3d 1149, 1154 (5th Cir. 1993) (holding that a defendant, who was not an authorized driver of a rental car, had a reasonable expectation of privacy in the partially open shoulder bag he left on the front seat of the car); *People v. Young,* 363 Ill. App.3d 268, 270, 843 N.E.2d 489 (Ill. App. Ct. 2006) (holding that the defendant, who was a passenger in a vehicle during an inventory search by a government agent, did not have a reasonable expectation of privacy in the vehicle, but did have a reasonable expectation of privacy in the closed suitcase he owned and stored in the trunk).

¶ 36. The holdings reached in other jurisdictions seem to indicate that the result of not having a bright-line rule is having holdings as varied as the facts. Although Fourth Amendment analysis does not lend itself to bright-line rules, *see Rakas,* 439 U.S. at 147, that does not mean the whim of judges determines the outcome of cases. We are obligated to look to all the facts and circumstances of the specific case in light of the principles set forth in prior decisions. *South Dakota v. Opperman,* 428 U.S. 364, 375 (1976).

¶ 37. The Court has set forth principles that are especially pertinent in resolving whether Bruski had a reasonable expectation of privacy in the travel case. First, personal property found in vehicles is treated differently than personal property found in dwellings. There is a lesser expectation of privacy in vehicles. *Wyoming v. Houghton,* 526 U.S. 295, 303 (1999); *New York v. Class,* 475 U.S. 106, 112–13 (1986); *Rakas,* 439 U.S. at 148; *United States v. Martinez-Fuerte,* 428 U.S. 543, 561 (1976); *Opperman,* 428 U.S. at 367. Second, neither ownership nor possession of an item alone establishes a reasonable expectation of privacy. *United States v. Salvucci,* 448 U.S. 83, 91–93 (1980). It is an individual's expectation of privacy in the space, rather than concepts of property law, that is critical. *Rawlings,* 448 U.S. at 104–05.

¶ 38. With the Fourth Amendment principles as a framework, and based on the evidence in light of the same two prongs that applied to determining whether Bruski had a reasonable expectation of privacy in Ms. Smith's vehicle, we conclude that Bruski did not have a reasonable expectation of privacy in the travel case. Not

only is there no evidence from his conduct that he thought he had a reasonable expectation of privacy in the travel case, but the totality of the circumstances establishes that any expectation of privacy he did have was illegitimate and unjustifiable. Given the specifics of Bruski's claim of privacy, this is not one that is "consistent with historical notions of privacy." *Dixon,* 177 Wis. 2d at 469.[4]

¶ 39. As mentioned above, there is a reduced expectation of privacy in vehicles. *Houghton,* 526 U.S. at 303; *Class,* 475 U.S. at 112–13; *Rakas,* 439 U.S. at 148; *Martinez-Fuerte,* 428 U.S. at 561; *Opperman,* 428 U.S. at 375. Bruski left the travel case in a vehicle that he did not own. He left it in a vehicle in which he had established no connection. He left it in a vehicle where he had no reasonable expectation of privacy.[5]

---

[4] The dissent contends that historical notions of privacy provide a "particularly compelling" reason to conclude that Bruski had a reasonable expectation of privacy in the travel case. Dissent, ¶ 69. It cites cases that discuss the private nature of items like luggage, purses, and footlockers. *Id.*

The dissent puts too much emphasis on the type of property, rather than the type of claim made by the movant. The factors provided in *State v. Dixon,* 177 Wis. 2d 461, 501 N.W.2d 442 (1993), which the dissent applies as though they are controlling and exclusive, include the following factor: "whether the *claim* of privacy is consistent with historical notions of privacy." *Id.* at 469 (emphasis added). It does not read "whether the *property* is consistent with historical notions of privacy."

[5] The dissent argues that

[a]pplying the principle that a person may have a reasonable expectation of privacy in baggage within a vehicle in which that person does not have a reasonable expectation of privacy requires that we analyze the person's privacy interest in the baggage *separately* from the person's privacy interest in the vehicle.

¶ 40. Courts "have been reluctant to find a reasonable expectation of privacy where the circumstances reveal a careless effort to maintain a privacy interest." *United States v. Angevine*, 281 F.3d 1130, 1135 (10th Cir. 2002) (*citing United States v. Anderson*, 154 F.3d 1225, 1232 (10th Cir. 1998)). Bruski left his travel case in a vehicle he did not have a reasonable expectation of privacy to while he was in such a state that he appeared dead, and required physical shaking to be roused.

¶ 41. The ease with which Officer Beauchamp came across the travel case illustrates Bruski's carelessness and failure to take "precautions customarily taken by those seeking privacy." *Dixon*, 177 Wis. 2d at 469. Officer Beauchamp searched the travel case during the course of assisting Ms. Smith to locate her keys. He had already searched in places where they may have fallen or been placed: the seats, between the seats, in the glove compartment, and in the ashtray. When the keys still had not turned up, he looked in the travel case. It was large enough for the keys to fit in. It was close enough to the ignition of the vehicle for it to be a logical next place to look. Additionally, Bruski had not done anything to protect any privacy interest he may have had. The travel case was not locked. It did not have identifying information on its exterior. Nothing indicated that Bruski had an expectation of privacy in the travel case. Even when Officer Beauchamp was in the process of opening it, Bruski had neither a verbal or nonverbal response.

---

Dissent, ¶ 55. Such a requirement conflicts with considering the totality of the circumstances. *Dixon*, 177 Wis. 2d at 469 (stating "[t]he totality of the circumstances is the controlling standard" after listing the reasonable expectation of privacy factors).

196

¶ 42. One factor going in Bruski's favor is his ownership of the travel case. However, neither ownership nor possession of an item alone establishes a reasonable expectation of privacy. *Salvucci,* 448 U.S. at 91–93.

¶ 43. The evidence indicates that Bruski did not have an actual expectation of privacy in the travel case. Assuming Bruski did have an actual expectation of privacy in the travel case, the totality of the circumstances establish that he did not have a legitimate or justifiable expectation of privacy. Accordingly, we conclude that Bruski lacked a reasonable expectation of privacy in the travel case.

¶ 44. We hold that Bruski lacked standing to assert a Fourth Amendment claim because he failed to prove that he had a reasonable expectation of privacy in either the vehicle in which the police found his travel case or the travel case itself.

¶ 45. Our holding that Bruski lacks the necessary standing to make a Fourth Amendment claim completes our resolution of this case. It is unnecessary for us to address whether Ms. Smith granted Officer Beauchamp the requisite consent to conduct a valid search. Consent analysis would be appropriate only if we concluded that Bruski satisfied the requirements to bring a Fourth Amendment claim. *See State v. Matejka,* 2001 WI 5, 241 Wis. 2d 52, 621 N.W.2d 891.[6]

---

[6] *State v. Matejka,* 2001 WI 5, 241 Wis. 2d 52, 621 N.W.2d 891, presented a different issue than the one that arises in this case. Defendant Jennifer Matejka claimed the government had violated her Fourth Amendment rights when it searched her jacket. The court held that the search of Matejka's jacket was reasonable based on the driver's consent to the search of his vehicle. Her jacket (i.e., personal property) had been retrieved from the vehicle being searched. Before a government agent

■

## III

¶ 46. Bruski failed to prove that he had a reasonable expectation of privacy in either the vehicle or the travel case. Therefore, he did not have standing to make a Fourth Amendment claim to suppress the evidence. For the reasons set forth, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 47. ANN WALSH BRADLEY, J. (*dissenting*). The facts of this case are deceptively simple. The police find the mother's parked car, with a young intoxicated man passed out inside. The police call the mother and she ultimately arrives at the parked car, accompanied by police. The daughter, who had been allowed to use the vehicle, is nowhere in sight.

¶ 48. Mom wants to move the car. The keys cannot be found. The police look for the keys in the car, and finding none, search for them in the young man's travel case. Inside the travel case they find no keys, but they do find a green, leafy substance and drug paraphernalia.

¶ 49. The problem lies not in the search of the car, which seems eminently reasonable, but in the search of the travel case. Although the travel case was in plain

---

searched the jacket, it had been removed from the vehicle and the agent had been given a description of her specific jacket. The *Matejka* court did not address whether Matejka had a reasonable expectation of privacy in her jacket. Her standing to challenge the search of her jacket may be inferred because the court addressed her Fourth Amendment claim. *Matejka* involved personal property that had been removed from a vehicle, facts that do not exist in this case.

view in the interior of the car, it was opaque, made of a solid, non-transparent material, and it was closed. If the police can search this man's travel case, without a warrant or an exception to the search warrant requirement, then they can search a closed purse, a closed briefcase, and a closed suitcase.

¶ 50. And before you know it, the fabric of Fourth Amendment protection is frayed. We will then not just be talking about the constitutional rights of some drunk or drugged kid who woke in the morning to find his travel case searched. Rather, the majority opinion establishes the Fourth Amendment parameters for us all. What we are really talking about in this opinion is the diminution of constitutional protection afforded to all citizens, your rights and mine.

¶ 51. The majority, correctly in my view, allows that a person may have a reasonable expectation of privacy in a travel bag within a vehicle in which that person does not have a reasonable expectation of privacy. Majority op., ¶ 34. Nonetheless, it concludes that Bruski did not have a reasonable expectation of privacy in his travel case. However, the reasons the majority offers do not support its conclusion. They either rely on Bruski's lack of a reasonable expectation of privacy in the vehicle itself, or do not implicate the factors that courts have used to determine reasonable expectations of privacy. *See* majority op., ¶ 24 (citing *State v. Dixon*, 177 Wis. 2d 461, 469, 501 N.W.2d 442 (1993)). Indeed, an analysis of the facts of this case in light of those factors compels the conclusion that Bruski did have a reasonable expectation of privacy in his travel case.[1]

---

[1] The majority notes that this court generally follows the United States Supreme Court's Fourth Amendment jurispru-

¶ 52. The reasons that the majority offers in support of its conclusion that Bruski did not have a reasonable expectation of privacy in the travel case are set forth in paragraphs 39 through 41 of the majority opinion. Like the facts of this case which are deceptively simple, at first blush the reasons given seem straightforward and reasonable. A closer analysis, however, reveals that the reasons given do not support the majority's conclusion. I will examine each in turn.

¶ 53. **"Bruski left the travel case in a vehicle that he did not own. He left it in a vehicle in which he had established no connection. He left it in a vehicle where he had no reasonable expectation of privacy."** Majority op., ¶ 39.

¶ 54. To begin, it is misleading to assert that Bruski "left" his travel case in the car, as if he abandoned it or stowed it someplace away from his person. Bruski kept his travel case next to him until he was

---

dence in analyzing the protections afforded by Article I, Section 11 of this state's constitution. Majority op., ¶ 20, n. 1. However, we are not required to do so. Rather, "[i]t is fundamental that that state courts be left free and unfettered by us in interpreting their state constitutions." *Michigan v. Long,* 463 U.S. 1032, 1041 (1983). Thus, Article I, Section 11 may afford greater protections than the Fourth Amendment. *State v. Knapp,* 2005 WI 127, ¶ 59, 285 Wis. 2d 86, 700 N.W.2d 899; *State v. Eason,* 2001 WI 98, ¶ 63, n.30, n.31, 245 Wis. 2d 206, 629 N.W.2d 625.

Some states do not employ the reasonable expectation of privacy test under their own state constitutions because of the "potential for inconsistent and capricious application," *State v. Alston,* 440 A.2d 1311, 1319 (N.J. 1981), and because "the United States Supreme Court's current use of the 'legitimate expectation of privacy' concept needlessly detracts from the critical element of unreasonable governmental intrusion" the constitution is aimed to guard against. *Commonwealth v. Sell,* 470 A.2d 457, 469 (Penn. 1983).

rousted from the car by the police officers who conducted the search. The officers woke him up and asked him to step out of the car, and Bruski complied. Thus, his "leaving" the bag in the vehicle was not a result of a choice to abandon the bag, but the result of complying with a police request.

¶ 55. It is correct that Bruski had the travel case in a vehicle that he did not own, and in which he did not have a reasonable expectation of privacy. However, the very question before the court is whether a person may have a reasonable expectation of privacy in a travel case that is in a vehicle in which that person does not have a reasonable expectation of privacy. The majority answers this question affirmatively, but then engages in circuitous rationale. It offers as a reason why Bruski does not have a reasonable expectation of privacy in his travel case that he did not have a reasonable expectation of privacy in the car. This negates precisely the principle that the majority purports to establish. Applying the principle that a person may have a reasonable expectation of privacy in baggage within a vehicle in which that person does not have a reasonable expectation of privacy requires that we analyze the person's privacy interest in the baggage *separately* from the person's privacy interest in the vehicle. *U.S. v. Edwards,* 242 F.3d 928, 936–37 (10th Cir. 2001); *U.S. v. Buchner,* 7 F.3d 1149, 1154 (5th Cir. 1993).

¶ 56. **Bruski "left" the travel case "while he was in such a state that he appeared dead, and required physical shaking to be roused."** Majority op., ¶ 40.

¶ 57. The majority fails to explain why Bruski's being unconscious counts against his having a reasonable expectation of privacy in his travel case, except to imply that being unconscious demonstrates careless-

ness. *Id.* It cites no authority for the proposition that sleeping people have diminished expectations of privacy or why society would be less likely to view the privacy expectations of the unconscious as unreasonable. Further, it does not explain what factor Bruski's waking state implicates.

¶ 58. **"The ease with which Officer Beauchamp came across the travel case illustrates Bruski's carelessness and failure to take 'precautions customarily taken by those seeking privacy.' "** Majority op., ¶ 41.

¶ 59. The majority's assertion that the ease with which an officer comes across a piece of luggage decreases a person's reasonable expectation of privacy in that luggage is surprising. Officers may easily come across any luggage, carrying case, or handbag that one happens to be holding. In the majority's view, the fact that it is in a person's hands (and therefore easy to "come across") provides a reason that the person's reasonable expectation of privacy in the bag is diminished.

¶ 60. **"Bruski had not done anything to protect any privacy interest he may have had."** Majority op., ¶ 41.

¶ 61. Among the factors the majority cites as relevant in determining reasonable expectation of privacy is "whether the accused took precautions customarily taken by those seeking privacy." Majority op., ¶ 24 (citing *Dixon,* 177 Wis. 2d at 469). Bruski did take such precautions. The fact that Bruski kept his travel case close at hand supports the conclusion that he had a reasonable expectation of privacy because it evinces his ownership of the bag.

¶ 62. Placing the travel case on the floor next to him demonstrates Bruski's reasonable expectation of

privacy in the bag precisely because he did not have a reasonable expectation of privacy in the vehicle. Had Bruski left the travel case in the trunk of the car, rather than in the interior compartment, it would have been beyond his reach and therefore less clear that he owned the bag. Under the factors listed in *Dixon,* and cited by the majority, placing the travel case somewhere other than the interior compartment would *decrease* his reasonable expectation of privacy.

¶ 63. **The search was conducted "during the course of assisting Ms. Smith to locate her keys."** Majority op., ¶ 41.

¶ 64. The issue in this case is whether Bruski had a reasonable expectation of privacy in his travel case. If Bruski did have a reasonable expectation of privacy in his travel case, then a warrantless police search of the bag is per se unreasonable under the Fourth Amendment unless it falls under an exception to the warrant requirement. *State v. Payano-Romano,* 2006 WI 47, ¶ 30, 290 Wis. 2d 380, 714 N.W.2d 548; *State v. Boggess,* 115 Wis. 2d 443, 449, 340 N.W.2d 516 (1983). The purpose of the search is relevant only to whether it falls under such an exception, not to whether there was a reasonable expectation of privacy in the first place. However, the majority does not argue that the search falls under an exception to the warrant requirement. The purpose of the search is therefore irrelevant to *its* analysis, and fails to constitute a reason why Bruski would not have a reasonable expectation of privacy in his travel case.

¶ 65. For the above reasons, I do not think that the factors adduced by the majority to support its conclusion are persuasive. Moreover, I think that the factors set forth in prior cases support the conclusion that Bruski did have a reasonable expectation of privacy in his travel case.

¶ 66. As the majority notes, in *Dixon* this court outlined the following factors as relevant in determining whether an accused person has a reasonable expectation of privacy:

> (1) whether the accused had a property interest in the premises; (2) whether the accused is legitimately (lawfully) on the premises; (3) whether the accused had complete dominion and control and the right to exclude others; (4) whether the accused took precautions customarily taken by those seeking privacy; (5) whether the property was put to some private use; (6) whether the claim of privacy is consistent with historical notions of privacy.

177 Wis. 2d at 469. Although this list is not controlling, these factors support the conclusion that Bruski had a reasonable expectation of privacy in his travel case.

¶ 67. First, there is no question that Bruski had a property interest in the travel case; he owned it. Concerning the second factor, there is no contention that Bruski was in the vehicle illegally. Further, the fact that Ms. Smith stated that her daughter had possession of the car and may have lent it to a friend, and the fact that Bruski knew the daughter's first name, are some indication that he was there legitimately. With respect to the third factor, Bruski had the right to exclude others from use of his travel case.

¶ 68. Fourth, Bruski took precautions customarily taken by those seeking privacy. He kept the bag in the car, near him, on the floor, and within his sight, just as one would do in order to protect a bag from being accessed by others. The bag was opaque and hard-shelled, which prevented any external assessments of its contents. With respect to the fifth *Dixon* factor, Bruski used the bag for personal belongings.

204

¶ 69. Thus, I think that the first five *Dixon* factors provide ample reason to conclude that Bruski had a reasonable expectation of privacy in his travel case. However, the sixth factor, "whether the claim of privacy is consistent with historical notions of privacy," is particularly compelling. There is little doubt that society has historically recognized a privacy claim in travel bags like Bruski's. In *U.S. v. Block,* the Fourth Circuit made the case that expectations of privacy are at their most intense and most justifiable in precisely such places:

> Common experience of life, clearly a factor in assessing the existence and the reasonableness of privacy expectations, surely teaches all of us that the law's "enclosed spaces" mankind's valises, suitcases, footlockers, strong boxes, etc. are frequently the objects of his highest privacy expectations, and that the expectations may well be at their most intense when such effects are deposited temporarily or kept semi-permanently in public places or in places under the general control of another.

590 F.2d 535, 541 (4th Cir. 1978).

¶ 70. Similarly, in *U.S. v. Fultz* the Ninth Circuit stated that "certain types of containers—suitcases, valises, purses, and footlockers, for instance—do command high expectations of privacy" and that even cardboard boxes used as luggage command similarly high expectations of privacy, even when located in a space that is not the exclusive province of the boxes' owner. 146 F.3d 1102, 1105 (9th Cir. 1998). *See also Robbins v. California,* 453 U.S. 420, 424–25 (1981) (stating that, in contrast to the diminished expectations of privacy surrounding automobiles "[n]o such diminished expectation of privacy characterizes luggage; on the contrary, luggage typically is a repository of personal effects, the contents of closed pieces of luggage are hidden from view, and luggage is not generally subject to state regulation.").

205

¶ 71. Clearly the privacy of personal luggage has historic importance, and society would certainly recognize claims to privacy in personal luggage as legitimate.[2] At root, this case involves police searching Bruski's luggage, without a warrant, without probable cause, and without an exception to the warrant requirement. Bruski's reasonable expectation of privacy in his luggage does not diminish just because he was asleep in an automobile.

¶ 72. The majority states that "[w]e are obligated to look to all the facts and circumstances of the specific case in light of the principles set forth in prior decisions." Majority op., ¶ 36 (citing *South Dakota v. Opperman,* 428 U.S. 364, 375 (1976)). This affirmation rings hollow. The majority neglects to show how, in light of principles set forth in prior decisions, the reasons it adduces support its conclusion that Bruski did not have a reasonable expectation of privacy in his travel case. As I outline above, I think that the factors outlined in *Dixon* and the cases that recognize a privacy claim in luggage show that Bruski did have a reasonable expectation of privacy in his travel case. Accordingly, I respectfully dissent.

¶ 73. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.

---

[2] The majority's distinction between the type of property and type of claim is unpersuasive. Majority op., ¶ 36, n.4. This case is about a privacy claim in luggage, and the appropriate question under *Dixon* is therefore "whether the claim of privacy [in this case in personal luggage] is consistent with historical notions of privacy." *State v. Dixon,* 177 Wis. 2d 461, 469, 501 N.W.2d 442 (1993).