COURT OF APPEALS
DECISION
DATED AND FILED

October 24, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1470-CR**

Cir. Ct. No. **2019CF2683**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRYSON M. BLAND,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS and DAVID A. FEISS, Judges. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Bryson M. Bland appeals his judgment of conviction, entered upon guilty pleas, for two counts of possession of a firearm by a felon. Bland argues that he had standing under the Fourth Amendment as a frequent guest with a reasonable expectation of privacy to challenge the warrantless search that led to the second count. Additionally, Bland argues that trial counsel was ineffective for failing to investigate and present an additional witness to establish his standing to challenge the search. Upon review, we conclude that while Bland may have established standing as a guest, he did not have a reasonable expectation of privacy under the mattress in the child's bedroom where the gun was found. Further, we conclude that Bland failed to show he received ineffective assistance of counsel. According, we reject Bland's arguments and we affirm.

## BACKGROUND

¶2     The State filed a criminal complaint against Bland in June 2019. For the first count of possession of a firearm by a felon, the complaint alleged that a confidential informant (CI) working with the High Intensity Drug Trafficking Area (HIDTA) task force conducted a controlled buy of a 12 gauge Remington 870 Express Magnum shotgun from Bland on November 8, 2018. For the second count of possession of a firearm by a felon, the complaint alleged that the police arrested Bland on an active warrant from two other criminal cases on November 28, 2018, at a residence on North 51st Street in Milwaukee. The police observed Bland enter the residence; officers on surveillance surrounding the building noticed him attempt to exit from an upstairs window. With written consent from the tenant, the police searched the building and found a 9mm Hi-Point semi-automatic pistol between the mattress and box spring in an upstairs

bedroom. DNA evidence showed that Bland was a major contributor to the DNA collected from the trigger of the pistol.

¶3 In August 2019, Bland's counsel moved to suppress evidence from his arrest, and the State responded that Bland did not have standing to challenge the search. The circuit court conducted a hearing on the suppression motion in September 2019.[1] Trial counsel and the State agreed to the following facts recited by the court: Shannon Perry was the tenant at the residence; the searched bedroom belonged to one of Perry's children; Bland was Perry's godson; Perry stated Bland did not live with her, he just stopped over; Bland's address on the arrest warrant was not Perry's address, in other words, the police did not believe Bland resided at Perry's address; and the police observed Bland walk inside the residence and had not observed him there for an extended period of time.

¶4 Perry then was called to testify, stating that she rented the residence and lived there with her two daughters and two grandsons. Perry further testified that on the day of the search, there were visitors staying there: three sons from out of town; her daughter's friend; and Bland's son, who was Perry's grandson by one of her daughters, who did not live with Perry. Perry testified that Bland was her godson and they had a close relationship. She stated that Bland visited three to four times a week and even spent the night. He was allowed to visit and spend the night whenever he wanted. Bland had a key to the house and there were no limitations on his visits.

---

[1] The Honorable Michelle Ackerman Havas presided over Bland's suppression motion, plea, and sentencing. We refer to Judge Havas as the circuit court. The Honorable David A. Feiss presided over Bland's postconviction motion and evidentiary hearing. We refer to Judge Feiss as the postconviction court.

¶5     During the State's cross-examination of Perry, she testified that she had moved into this residence in September 2017, and during that time Bland had stayed over two or three times when she was at home—she worked nights generally. Perry stated that Bland did not contribute to rent, but he did help out if she needed something and he had money. She explained where her children slept in the house; she stated that Bland slept in the living room when he stayed over, not the upstairs bedroom at issue in the search.

¶6     After oral argument, the court concluded that in its review of the facts and circumstances of this case, Bland did not have a legitimate expectation of privacy in Perry's home. The court considered that while Bland was welcome, he only spent the night a few times, he did not have a bedroom, and he did not live there in Perry's eyes. The court noted that Perry testified that Bland did not leave clothes or belongings at the house, nor did he invite other people over. As a result, the court concluded that Bland did not have standing to challenge the search.

¶7     In October 2019, Bland decided to resolve his case with a plea. The court sentenced Bland to thirteen years of imprisonment as consecutive sentences for both counts, bifurcated as seven years of initial confinement and six years of extended supervision.

¶8     In November 2021, Bland moved for plea withdrawal as postconviction relief. He argued that trial counsel was ineffective for not calling two witnesses at the suppression hearing: Aquilar Evans, who is Perry's daughter, and Bland himself. Bland argued that Evans would have testified that Bland stayed at her mother's residence approximately three days a week. Further, he asserted that trial counsel failed to discuss his right to testify with him.

¶9 The postconviction court held an evidentiary hearing on Bland's ineffectiveness claim, during which it heard testimony from trial counsel, Evans, and Bland. Trial counsel reviewed the case and stated that the transcript from the suppression hearing was accurate. When asked if she thought Perry's testimony was inconsistent during direct and cross examination, trial counsel stated that she did not know if she would say that. She testified that parts of Perry's testimony bolstered the case for Bland's standing. Trial counsel testified that Bland did not give her Evans's name prior to the hearing or did not even suggest talking to her after the suppression hearing. She testified that she discussed Bland's right to testify, but also her concern that he would not be a credible witness.

¶10 Evans testified that she lived with her mother, Perry, at her home, at the time of Bland's arrest. She stated that Bland spent three nights a week sleeping there, in the basement or living room, and that he would help out with bills, but he did not have mail sent there or keep more than a few articles of clothing at the house.

¶11 Bland testified that at the time of his arrest, he was splitting his residence between Perry's house and another house on North 28th Street. He stated he had a key, slept wherever he "could close [his] eyes," and kept a gym bag there. He stated that trial counsel did not explain to him that he had to establish standing to challenge the search; however, he knew he was trying to show that he was staying there. He stated he provided Perry and Evans's names to his attorney. He testified that he thought Perry's testimony was inconsistent and he asked trial counsel to call Evans, but trial counsel stated that Evans's testimony was "not needed due to the case law she cited." He testified that trial counsel never informed him of his right to testify.

¶12 After reviewing the parties' arguments and the testimony presented, the postconviction court made an oral ruling denying Bland's motion for relief, concluding that he failed to show ineffective assistance of counsel. The court found that trial counsel was more credible than Bland on a number of issues including that Bland did not tell her about Evans and that she did discuss testifying on his own behalf with Bland.

¶13 Bland now appeals.[2]

## DISCUSSION

¶14 Bland argues that the circuit court erred when it concluded that he did not have standing under Fourth Amendment grounds to challenge the search of Perry's home. We conclude that Bland's claim fails because he failed to prove he had standing to challenge the search of the upstairs bedroom. Additionally, Bland contends that trial counsel provided ineffective assistance of counsel for not investigating and calling Evans as a witness to establish his standing. We conclude that Bland's claims fail because he failed to show trial counsel's performance was deficient, and that he suffered no prejudice, because having additional witnesses would not have changed the outcome of the suppression hearing.

---

[2] Pursuant to WIS. STAT. § 971.31(10) (2021-22), a circuit court order denying a suppression motion may be reviewed on appeal notwithstanding the defendant's guilty plea. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

### I. Standing under the Fourth Amendment

¶15 The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Whether a defendant has standing to raise a Fourth Amendment claim presents a question of law that we review independently. *State v. Trecroci*, 2001 WI App 126, ¶23, 246 Wis. 2d 261, 630 N.W.2d 555. Whether a search is reasonable under the Fourth Amendment is a question of law that we review independently. *Id.* When this court reviews a circuit court's order denying a motion to suppress, we will uphold the circuit court's findings of fact unless clearly erroneous. *Id.*

¶16 To establish standing to raise a Fourth Amendment claim, the individual has "the burden of proving that he or she had a reasonable expectation of privacy." *State v. Bruski*, 2007 WI 25, ¶22, 299 Wis. 2d 177, 727 N.W.2d 503. Further, "the critical inquiry is 'whether the person ... has a legitimate expectation of privacy in the invaded place.'" *Trecroci*, 246 Wis. 2d 261, ¶26 (citation omitted, ellipses in *Trecroci*).

¶17 "Whether an individual had a reasonable expectation of privacy in an area subjected to a search depends on two prongs." *Bruski*, 299 Wis. 2d 177, ¶23. First, whether the individual's conduct exhibited an actual, or subjective, expectation of privacy in the area searched and the item seized. *Id.* Second, if the necessary expectation of privacy is proven, then the court determines "whether such an expectation of privacy was legitimate or justifiable" such that society recognizes it as "reasonable." *Id.* The court "consider[s] the totality of the circumstances when evaluating the latter prong of the reasonable expectation test." *Id.*, ¶24.

¶18     The focus of the standing challenge was Bland's status in Perry's house as an overnight guest or a visitor.  The record reflects that Perry testified that Bland was a welcome overnight guest—he had a key, he was invited to come and go as he pleased, and he stayed over on some occasions.  For purposes of the Fourth Amendment, an overnight guest has a legitimate expectation of privacy in the home where he or she is staying.  *Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990) (holding that a person's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable").

¶19     Under Wisconsin law, this court has formulated an alternate analysis when "the person challenging the search claims status as a guest on the property." *State v. Fox*, 2008 WI App 136, ¶19, 314 Wis. 2d 84, 758 N.W.2d 790.  We must consider "(1) whether the guest's use of the premises was for a purely commercial purpose; (2) the duration of the guest's stay; and, perhaps most significantly, (3) the nature of the guest's relationship to the host." *Id.*  Under this analysis, we review that there are no allegations that Bland used Perry's residence for commercial purposes; Bland was a frequent, recurring visitor to the home; and Perry, the host, considered Bland part of her family.  Therefore, we conclude Bland had a reasonable expectation of privacy as a guest.

¶20     We turn to the critical inquiry into whether Bland had a reasonable "expectation of privacy in the invaded place," in other words, in the upstairs bedroom, under the mattress, where the gun was found.  *See Trecroci*, 246 Wis. 2d 261, ¶26 (citation omitted).  A guest to a property does not necessarily have a reasonable expectation of privacy in all areas of the house.  *Cf. State v. Sobczak*, 2013 WI 52, ¶28, 347 Wis. 2d 724, 833 N.W.2d 59 (discussing that a guest's authority to consent to a search may be limited to areas with joint access

depending on the facts and circumstances of the invitation).  Here, the record reflects that Bland's connection to the house included visiting Perry, her children, and his son, and sleeping in the living room or the basement.  The upstairs bedroom belonged to one of Perry's daughters.  It was not Bland's space and there is nothing in the record that shows that he was keeping his things in that space during his repeat visits, or that supports his assertion that he had a reasonable expectation of privacy in the space between the mattress and the box spring in that room.

¶21     We conclude that Bland did not have a reasonable expectation of privacy in the upstairs bedroom of Perry's house; therefore, he did not have standing to challenge the search of that room.  Accordingly, the postconviction court did not err when it denied Bland's motion for postconviction relief.

## II.     Ineffective assistance of counsel

¶22     In Bland's second argument, he contends that trial counsel provided ineffective assistance of counsel by failing to call Evans to establish his standing.[3] To demonstrate ineffective assistance of counsel, a defendant must satisfy the familiar two-prong test in *Strickland v. Washington*, 466 U.S. 668 (1984).  A "defendant must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id.* at 687.  If the defendant makes an insufficient showing on one prong, this court needed not consider the second. *Id.* at 697.

---

[3] We note that Bland abandons his ineffectiveness claim based on his allegation that trial counsel failed to inform him of his right to testify.  "[A]n issue raised in the trial court, but not raised on appeal, is deemed abandoned." *A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

¶23 "An ineffective assistance of counsel claim presents a mixed question of fact and law." *State v. Pico*, 2018 WI 66, ¶13, 382 Wis. 2d 273, 914 N.W.2d 95. We will not disturb the circuit court's findings of fact unless clearly erroneous. *State v. Mull*, 2023 WI 26, ¶31, 406 Wis. 2d 491, 987 N.W.2d 707. However, we independently review the question of law of whether those facts constitute ineffective assistance of counsel. *Id.*

¶24 The record reflects that the circuit court found trial counsel to be more credible than Bland during the evidentiary hearing on the two issues he raises. "When the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony." *State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345. First, the circuit court found that trial counsel did not recall Bland telling her to contact Evans or that Evans could better explain his status in the house than her mother. Further, trial counsel did not recall Bland asking for Evans to be put on the stand during the suppression hearing after Perry's testimony to clarify any inconsistencies. Our review of the record demonstrates that the circuit court's findings were not clearly erroneous, and we therefore accept them as true. *See Mull*, 406 Wis. 2d 491, ¶31.

¶25 With our acceptance of the postconviction court's credibility and factual findings, we independently determine whether trial counsel's performance was deficient. "Counsel's conduct is constitutionally deficient if it falls below an objective standard of reasonableness." *State v. Thiel*, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305. We consider trial counsel's performance with the information known at the time of the suppression hearing. *See id.* We conclude it was objectively reasonable for trial counsel not to call a witness, such as Evans,

whose testimony was unknown prior to the hearing. Therefore, Bland has failed to make a showing that trial counsel's performance was deficient.

¶26 Although Bland's failure to show deficiency defeats his ineffectiveness claim, for completeness, we conclude that Bland also fails to show prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Bland asserts that Evans would have established that he slept at Perry's house three nights a week. As our analysis above shows, we conclude that Bland established he was a guest with the concordant expectations of privacy. The record does not demonstrate that Evans would have established Bland's reasonable expectation of privacy in the upstairs bedroom. Therefore, Evans's testimony would be cumulative to Perry's and would not have affected the outcome of the suppression hearing. We conclude Bland's defense was not prejudiced by the failure to call Evans as a witness.

## CONCLUSION

¶27 For the reasons stated above, we conclude that Bland's claim for postconviction relief fails.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.