*217 MICHAEL J. GABLEMAN, J.
¶ 1. This is a review of an unpublished decision of the court of appeals[1] that reversed the judgment of the Washington County Circuit Court[2] convicting Jeremiah Purtell of four counts of possession of child pornography, contrary to Wis. Stat. § 948.12(lm) (2009-10).[3] The court of appeals held that the circuit court erred in denying Purtell's motion to suppress evidence seized from a warrantless search of his personal computer. In denying Purtell's motion to suppress, the circuit court reasoned that the probation agent's search of Purtell's computer complied with Wis. Admin. Code § DOC 328.21(3) (a) (Dec. 2006)[4] because she had reasonable grounds to believe the computer, which Purtell knowingly possessed in violation of the terms of his probation, contained contraband. The court of appeals concluded that the probation agent improperly searched the computer under the mistaken understanding that Purtell possessed images that violated the terms of his probation. Because the images were not prohibited under the terms of Purtell's probation or otherwise illegal to possess, the court of appeals held the probation agent lacked reasonable grounds to search the computer.
¶ 2. The question presented in this case is whether the warrantless probation search of Purtell's computer violated his constitutional rights under the *218 Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution.
¶ 3. We hold the circuit court properly denied Purtell's motion to suppress. A probation agent's search of a probationer's property satisfies the reasonableness requirement of the Fourth Amendment if the probation agent has "reasonable grounds" to believe the probationer's property contains contraband. Griffin v. Wisconsin, 483 U.S. 868, 872 (1987). The record demonstrates that the probation agent had reasonable grounds to believe Purtell's computer, which Purtell knowingly possessed in violation of the conditions of his probation, contained contraband. Accordingly, we hold the probation search of the contents of Purtell's computer did not violate the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Wisconsin Constitution and reverse the decision of the court of appeals.
I. BACKGROUND
¶ 4. The material facts underlying this appeal stem from events occurring in November 2006, when Jeremiah J. Purtell pled guilty to two felony counts of mistreating animals in a cruel manner, contrary to Wis. Stat. § 951.02 (2005-06). This 2006 guilty plea arose from events that transpired after Purtell began dating a veterinary technician who he met through Myspace, a social-networking website. After a few weeks of dating, Purtell moved into the technician's apartment which she shared with her two dogs, a Shetland sheepdog and a Scottish terrier. Over the next several weeks, Purtell tortured her two dogs, piercing their eyes with a needle, repeatedly throwing them against a wall, and holding *219 them by their necks. He also struck the Scottish terrier with a pipe and cut the Shetland sheepdog several times with scissors. Purtell later admitted to strangling the Scottish terrier to death. During the investigation into the animal abuse charges, the Madison Police Department examined Purtell's computer and found over thirty images depicting bestiality, including sex acts between women and either dogs or horses.
¶ 5. On March 28, 2007, the Dane County Circuit Court[5] withheld sentence, placed Purtell on 48 months of probation, and imposed but stayed a sentence of 5 months and 29 days. For purposes of his probation, Purtell's supervision was transferred from Dane to Washington County and his case was assigned to Probation Agent Kristine Anderson ("Agent Anderson"), who had a specialty caseload of probationers with animal abuse backgrounds.
¶ 6. Agent Anderson met with Purtell for his intake appointment on April 6, 2007. At this time, Agent Anderson reviewed with Purtell his judgment of conviction, the general rules of community supervision,[6] and the conditions she was imposing that were supplemental to those imposed by the court.[7] Purtell *220 objected to several of these supplemental conditions, including the stipulation he "not purchase, possess, nor use a computer, software, hardware, nor a modem without prior agent approval."[8] Beyond the condition concerning computers, Agent Anderson imposed several other rules based on her knowledge of his criminal history. Because his underlying conviction related to animal cruelty and originated from using Myspace to meet the veterinarian technician whose dogs he had tortured, Purtell was "prohibited from maintaining a Myspace.com account" and from having any contact with animals. Additionally, Purtell's presentence investigation report[9] informed Agent Anderson that he had a preoccupation with internet pornography and befriend *221 ing and dating underage girls. Accordingly, Purtell was prohibited from having any unsupervised contact with children.
¶ 7. During the intake meeting, Purtell disclosed to Agent Anderson that he had a Myspace account. Agent Anderson reviewed Purtell's Myspace page. On the opening page there was an animated video of a bull with audible sound declaring "the internet is for porn." At the end of the video was a cartoon illustration of a man standing behind a cow. In front of the cow was an equal sign and an image of a half cow/half man character. Agent Anderson also observed a blog post on his Myspace page titled, "oops ... I did it again," which indicated Purtell was pursuing a relationship with his friend's fifteen-year-old sister. Purtell was directed to close his Myspace account by the end of the day.
¶ 8. Purtell continued to object to the supplemental conditions and stated he would not remove his computers unless the circuit court judge ordered him to do so. Agent Anderson requested her supervisor, Correctional Field Supervisor Chad Frey ("CFS Frey"), to join the meeting and reinforce the need for the supplemental conditions. CFS Frey informed Purtell that he had a right to correspond with the circuit court and his attorney regarding his objections, but clarified that until the circuit court ordered differently, Purtell was expected to comply with all of the rules of his probation, including those imposed by Agent Anderson.
¶ 9. Purtell eventually relented and agreed to surrender the two computers in his possession — a laptop and desktop computer — to his father the next day, April 7.
¶ 10. Later in the afternoon on April 6, Bob Adams, the program coordinator of the group home where Purtell resided, contacted Agent Anderson and *222 reported that Purtell had returned from the intake meeting very disgruntled and had skipped his appointment for mental health counseling. Purtell told Adams he had no intention of complying with the conditions of his probation and would keep his computers and not close down his Myspace account. Purtell explained to Adams he would simply hide his computers during scheduled home visits.[10]
¶ 11. On Monday, April 9, Adams called Agent Anderson and informed her that Purtell had not removed his computers from his room and had failed to report to the Washington County Jail to submit a DNA sample. Further, Adams conveyed that Purtell had violated the group home's curfew on the evening of Saturday, April 7. Agent Anderson responded that she planned to go to the group home with other probation agents and law enforcement officers to place Purtell in custody for failing to comply with the rules of his supervision.
¶ 12. Later in the morning on April 9, the probation officers did, indeed, take Purtell into custody. Agent Anderson, with two other probation agents, searched Purtell's room and confiscated, among other things, a laptop, desktop computer, other related computer equipment, and personal papers.
¶ 13. After going back to her office, Agent Anderson inventoried the items confiscated in the search and found among Purtell's personal papers a crayon-colored picture of a kitten with accompanying notes that, like *223 his Myspace activity, suggested Purtell was attempting to engage in a relationship with his friend's fifteen-year-old sister.
¶ 14. Agent Anderson then searched one of Purtell's computers without a warrant.[11] When she turned on the computer, several titles to images popped up on the screen that involved females engaged in sexual activity with animals and images of what appeared to be underage females. Agent Anderson notified her supervisor, CFS Frey, of the images she had found on Purtell's computer. They contacted local law enforcement officials, who subsequently obtained two search warrants which allowed them to search Purtell's computer equipment, including the hard drives of his laptop and desktop computers.[12] The resulting search revealed several still images and videos of children engaged in sex acts. On March 19, 2010, based on the evidence acquired through the search of Purtell's computers, Purtell was charged with eight counts of possession of child pornography, contrary to Wis. Stat. § 948.12(lm).
¶ 15. Purtell moved to suppress the evidence seized from the computers, arguing that the evidence was obtained in violation of his Fourth Amendment *224 rights.[13] Purtell conceded that Agent Anderson had "reasonable grounds"[14] to search Purtell's room to ascertain whether he had complied with the conditions of his probation, and that Agent Anderson lawfully seized his computers due to his non-compliance. However, Purtell argued that Agent Anderson exceeded the permissible scope of that search by searching the contents of his computer. According to Purtell, Agent Anderson lacked both a warrant and reasonable grounds to conduct the search, and the evidence subsequently seized should therefore be suppressed.
¶ 16. The Washington County Circuit Court denied Purtell's motion to suppress, concluding the search was justified because there were reasonable grounds to believe the computer contained contraband.[15] On September 1, 2011, Purtell was found guilty by jury trial of four counts of possession of child pornography.
¶ 17. Purtell appealed from the judgment of conviction and order denying his motion to suppress. The court of appeals reversed the judgment of conviction, concluding that Agent Anderson did not have *225 reasonable grounds to believe Purtell's computers contained contraband. State v. Purtell, No. 2012AP1307-CR, unpublished slip op., ¶ 14 (Wis. Ct. App. Mar. 7, 2013). The court reasoned that the State's argument centered "on the faulty assumption that Purtell's probation conditions prohibited him from possessing images depicting cruelty to animals or the mutilation of animals." Id. Because images depicting animal cruelty or mutilation were not prohibited under Purtell's rules of probation, and were not otherwise illegal, there was no basis on which "to affirm the circuit court's denial of Purtell's suppression motion." Id.
¶ 18. The State petitioned this court for review, which we granted on November 20, 2013.
II. STANDARD OF REVIEW
¶ 19. This case requires us to address whether the warrantless search of Purtell's computer by his probation officer violated his Fourth Amendment rights.[16] Whether evidence should have been suppressed as the result of a Fourth Amendment violation is a mixed question of law and fact. We take the circuit court's findings of fact as true unless clearly erroneous, and *226 "our application of constitutional principles to those facts is de novo." State v. Sobczak, 2013 WI 52, ¶ 9, 347 Wis. 2d 724, 833 N.W.2d 59.
III. DISCUSSION
¶ 20. The question before this court is whether Purtell's Fourth Amendment rights were violated when his probation officer searched the contents of his computer.[17] The State argues that the probation officer had reasonable grounds to believe the contents of Purtell's computers contained contraband because the computers themselves were contraband under the conditions of his probation. We conclude that the record demon *227 strates Agent Anderson had reasonable grounds to believe the computers contained contraband and, accordingly, hold the circuit court properly denied Purtell's motion to suppress.
a. Fourth Amendment Principles in the Context of Probation
¶ 21. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const, amend. IV "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). "The touchstone of the Fourth Amendment is reasonableness," United States v. Knights, 534 U.S. 112, 118 (2001), and the reasonableness of any search is considered in the context of the individual's legitimate expectations of privacy. Maryland v. King, 567 U.S. _, 133 S. Ct. 1958, 1978 (2013).
¶ 22. Here, a Fourth Amendment challenge is being made by a probationer. The Fourth Amendment affords protection only against searches that are unreasonable, and what is unreasonable for a probationer differs from what is unreasonable for a law-abiding citizen. Law-abiding citizens are entitled to the full panoply of rights and protections provided under the Fourth Amendment. Conversely, citizens convicted of a crime and incarcerated have had their privacy interests largely "extinguished by the judgments placing them in custody." Banks v. United States, 490 F.3d 1178, 1186 (10th Cir. 2007) (quoting Green v. Berge, 354 F.3d 675, *228 679 (7th Cir. 2004) (Easterbrook, J., concurring)); see also United States v. Huart, 735 F.3d 972, 975 (7th Cir. 2013) ("It is well settled that prisoners have no reasonable expectation of privacy in the belongings they keep with them."). Somewhere between these two extremes on the "privacy continuum," Banks, 490 F.3d at 1186, lies convicted felons placed on conditional release, such as probation or parole. Probationers are entitled to a certain degree of constitutional protection under the Fourth Amendment, but their rights against warrant-less searches and seizures are significantly curtailed. See Samson v. California, 547 U.S. 843, 849-850 (2006) (noting that probationers "do not enjoy the absolute liberty to which every citizen is entitled," and that probationers have "significantly diminished privacy interests") (internal quotation marks omitted).
¶ 23. This is so because, like incarceration, probation is "a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." Griffin, 483 U.S. at 874. Wisconsin probationers are in the legal custody[18] of the Wisconsin Department of Corrections, where they are subject to the "control of the department under conditions set by the court and *229 rules and regulations established by the department . . . Wis. Stat. § 973.10(1). Consequently, while law-abiding citizens enjoy the fundamental rights and liberty interests conferred by the constitution, probation has been characterized as a "conditional liberty [that is] properly dependent on observance of special [] restrictions." Morrissey v. Brewer, 408 U.S. 471, 480 (1972).
¶ 24. These special restrictions are vitally important to the State's effective administration of its probation system. As the United States Supreme Court in Griffin explained, "A State's operation of a probation system . . . presents 'special needs' beyond normal law enforcement. .. ." 483 U.S. at 873-74. The restrictions inherent in the probation system are necessary to "assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at largeG"; these dual goals of rehabilitation and public safety "require and justify the exercise of supervision to assure that the restrictions are in fact observed." Id. at 875.
¶ 25. The background and criminal history of each probationer is different, and the individual's level of supervision and corresponding privacy interests will vary. It is the probation agent's responsibility to obtain necessary information about the probationer to provide appropriate supervision, evaluate their needs and security risks, determine their goals and objectives, and establish written supplemental rules of supervision. *230 This flexibility assists in ensuring the "degree of impingement upon [a probationer's] privacy" is no greater than necessary to support rehabilitation and safeguard the community from potential harm. Id. This case-by-case approach means that probation "can itself be more or less confining depending upon the number and severity of restrictions imposed," and in certain circumstances, "the probation [agent] must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society." Id. at 874, 879.
b. The Probation Agent Had Reasonable Grounds to Search Purtell's Computer.
¶ 26. Wisconsin probation regulations permit a probation agent to search a probationer's property "if there are reasonable grounds to believe that the quarters or property contain contraband . . . ." Wis. Admin. Code § DOC 328.21(3)(a). In Griffin v. Wisconsin, the United States Supreme Court upheld this regulation, concluding that it "satisfies the Fourth Amendment's reasonableness requirement under well-established principles." 483 U.S. at 873. Griffin held that the special needs of Wisconsin's probation system in effectively supervising probationers and protecting the community justified replacing the standard of probable cause with a lesser "reasonable grounds" standard. The Court reasoned that probation officers must be permitted "to respond quickly to evidence of misconduct" and "the deterrent effect that the possibility of expeditious searches" creates would be unduly compromised by a probable cause requirement. Id. at 876; see also Knights, 534 U.S. at 121 ("Although the Fourth Amendment ordinarily requires the degree of probability em *231 bodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable.").
¶ 27. Purtell does not challenge the search of his residence (a group home) or the seizure of his computers. He concedes Agent Anderson had reasonable grounds to search his room and that his computers were "contraband" under the terms of his probation. Instead, Purtell argues that, while his computers were lawfully seized as contraband, Agent Anderson's search of the computer's contents constituted an independent, governmental search that violated his Fourth Amendment privacy interests. The court of appeals agreed, concluding that the State's argument rested on the faulty assumption that Purtell was prohibited from possessing images depicting cruelty to animals. Agent Anderson testified during the suppression hearing that she was concerned Purtell may have images depicting animal cruelty or mutilation on his computers. Because possessing images of animal cruelty was not prohibited under Purtell's conditions of probation, and were not otherwise illegal to possess,[19] the court of appeals concluded that Agent Anderson did not have "reasonable grounds" to believe Purtell's computer contained contraband. Purtell, No. 2012AP1307-CR, ¶ 14.
¶ 28. We disagree. As a threshold matter, it is difficult to imagine a scenario where a probation agent would lack reasonable grounds to search an item the *232 probationer is explicitly prohibited from possessing. Indeed, the fact that the computers in question were themselves contraband is critical. Ordinary citizens, even citizens who are subject to diminished privacy interests because they have been detained, have a legitimate expectation of privacy in the contents of their electronic devices. See Riley v. California, 134 S. Ct. 2473 (2014); State v. Carroll, 2010 WI 8, ¶ 27, 322 Wis. 2d 299, 778 N.W.2d 1. This privacy interest, however, is undercut when the electronic device in question is contraband.[20] See United States v. Skinner, 690 F.3d 772, 785 (6th Cir. 2012), cert. denied, 133 S. Ct. 2851 (2013) (observing that "courts have declined to recognize a 'legitimate' expectation of privacy in contraband and other items the possession of which are themselves illegal, such as drugs and stolen property.").
¶ 29. Thus, Purtell's expectation of privacy in his computers was diminished, not only because he was on probation, but because his possession and use of the *233 computers was specifically prohibited by a condition of that probation.
¶ 30. Conditions of probation are imposed for a reason.[21] So, when a condition of probation prohibits the possession of a certain item, and the subject of the search knowingly breaks that condition, in most situations a probation agent would presumably have reasonable grounds to search the contents of the item. Regardless, whether or not a probation agent would ever conceivably lack reasonable grounds to believe that contraband in a probationer's possession contains more contraband, it is certainly not a close question here. The record shows that Agent Anderson had reasonable grounds to conduct a probation search of Purtell's computer based on the factors provided in the Wisconsin Administrative Code.
¶ 31. The Wisconsin Administrative Code sets forth a list of factors to be considered in determining whether there are reasonable grounds to believe a probationer's property contains contraband:
(a) The observations of staff members.
*234 (b) Information provided by informants.
(c) The reliability of the information provided by an informant. In evaluating the reliability of the information, the field staff shall give attention to the detail, consistency and corroboration of the information provided by the informant.
(d) The reliability of the informant. In evaluating the informant's reliability, attention shall be given to whether the informant has supplied reliable information in the past and whether the informant has reason to supply inaccurate information.
(e) The activity of the client that relates to whether the client might possess contraband or might have used or be under the influence of an intoxicating substance.
(f) Information provided by the client that is relevant to whether the client has used, possesses or is under the influence of an intoxicating substance or possesses any other contraband.
(g) The experience of a staff member with that client or in a similar circumstance.
(h) Prior seizures of contraband from the client.
(i) The need to verify compliance with the rules of supervision and state and federal law.
Wis. Admin. Code § DOC 328.21(7). As a condition of his probation, Purtell was "not [to] purchase, possess, nor use a computer, software, hardware, nor a modem without prior agent approval."[22] (Emphasis added.) *235 Here, Agent Anderson was justified in ascertaining the extent of Purtell's noncompliance with the rules of his supervision. Wis. Admin. Code § DOC 328.21(7)(i). It was already established that Purtell had knowingly violated the condition against possessing a computer, and it was unquestionably Agent Anderson's prerogative to ascertain whether he had further violated the conditions imposed on his probation by using those computers. It is irrelevant whether the images of animal cruelty were prohibited by Purtell's probationary terms or otherwise illegal to possess; the use of the computer was itself prohibited, and Agent Anderson had reasonable grounds to believe Purtell had impermissibly used them.
¶ 32. Further, it is apparent from Agent Anderson's testimony at the suppression hearing she considered several factors set forth in the Wisconsin Administrative Code — which probation agents are instructed to consider in determining whether a probationer’s property contains contraband — in her decision to search Purtell's computer: (1) Purtell's Mys-pace page and personal papers indicated he was attempting to start a relationship with a fifteen-year-old girl, and Myspace is the same avenue he used to contact a prior victim.[23] Agent Anderson knew of Purtell's background befriending underage girls and had prohib *236 ited him from being in contact with children. She expressed concern that he may have other Myspace accounts or be using other networking sites, such as Facebook, where he would have access to other potential victims;[24] (2) Purtell's Myspace page had cartoon images of human/animal hybrids, which Agent Anderson — having an expertise in animal cruelty cases[25] — felt was a disturbing signal of potential future violence against, not just animals, but also people;[26] (3) Purtell did not attend his scheduled mental health assessment, did not submit his court-ordered DNA sample, and failed to follow the residency rules of his *237 group home by missing curfew;[27] and (4) Purtell displayed extreme reluctance to surrender his computers[28], and was even so bold as to inform the coordinator of his group home that he intended to hide them during home visits.[29] Taken in the aggregate, and given Purtell's blatant disregard for the conditions of his probation, as well as Agent Anderson's knowledge of Purtell's background and those of similar probationers, we conclude there were reasonable grounds for believing Purtell's computers contained contraband,[30] such as *238 correspondence with underage girls[31] or additional Myspace accounts.[32] In addition, Agent Anderson was *239 justified in ascertaining the extent of Purtell's probation violation by determining whether he had used the computer in addition to possessing it, and if so, the degree of his use. Accordingly, we conclude Agent Anderson's warrantless search of Purtell's computer complied with Wis. Admin. Code § DOC 328.21(3)(a) and did not violate Purtell's Fourth Amendment rights.
IV. CONCLUSION
¶ 33. We hold the circuit court properly denied Purtell's motion to suppress. A probation agent's search of a probationer's property satisfies the reasonableness requirement of the Fourth Amendment if the probation agent has "reasonable grounds" to believe the probationer's property contains contraband. Griffin, 483 U.S. at 874. The record demonstrates that the probation agent had reasonable grounds to believe Purtell's computer, which Purtell knowingly possessed in violation of the conditions of his probation, contained contraband. Accordingly, we hold the probation search of the contents of Purtell's computer did not violate the Fourth Amendment to the United States Constitution or Article I, Section 11 of the Wisconsin Constitution and reverse the decision of the court of appeals.
*240 By the Court. — The decision of the court of appeals is reversed.

 State v. Purtell, No. 2012AP1307-CR, unpublished slip op. (Wis. Ct. App. Mar. 7, 2013).

 The Honorable James K. Muehlbauer presided.

 All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

 Effective July 1, 2013, Wis. Admin. Code § DOC 328 was repealed and recreated. All subsequent citations to the Wisconsin Administrative Code will be to the 2006 version, which was the version in effect at the time of the search of Purtell's computer on April 9, 2007.

 The Honorable James Martin presided.

 "Probation, parole and extended supervision all involve persons under community supervision." State v. Rowan, 2012 WI 60, ¶ 10, 341 Wis. 2d 281, 814 N.W.2d 854. The conditions of community supervision are enumerated in a form entitled "Rules of Community Supervision," which provides a standardized list of rules issued by the Department of Corrections that individuals under community supervision must follow in addition to any other court-ordered conditions.

 Probation agents have the authority to establish rules of probation that are supplemental to court-imposed conditions. Wis. Admin. Code, § DOC 328.04(2) (d). The Rules of Community Supervision require the probationer to "follow any specific *220 rules that may be issued by an agent to achieve the goals and objectives of your supervision. The rules may be modified at any time, as appropriate."

 This condition supplemented a condition that had already been imposed by the circuit court which provided, as a condition of Purtell's probation, he was "not to own or possess a computer," but that he could use a computer "at his place of business or school only."

 The Dane County Circuit Court ordered a presentence investigation report in 2006 after Purtell pled guilty to the two counts of animal cruelty discussed above. While this report is not in the record, a second presentence investigation report was ordered by the Washington County Circuit Court after Purtell was convicted by jury trial in September 2011 of four counts of possessing child pornography. This 2011 report, which is in the record, references the 2006 report that Agent Anderson relied upon in assessing Purtell's treatment needs. "The primary purpose of the presentence investigation report is to provide the sentencing court with accurate and relevant information upon which to base its sentencing decision." Wis. Admin. Code § DOC 328.27(1). However, it also serves a helpful role for the probation agent in "determining levels of supervision, classification, program assignment.. . decision making!,] and in the overall correctional treatment" of the probationer. Id.

 Depending on the level of supervision deemed most appropriate, a probation agent is typically required to make home visits to a probationer's home every 30 to 90 days. See Wis. Admin. Code § DOC 328.04(4). The level of supervision is generally based on the needs and risks of the probationer. § DOC 328.04(1).

 The circuit court noted in its findings of fact that there was conflicting testimony regarding which computer was searched by Agent Anderson. Agent Anderson testified she searched the laptop, while a police detective testified it was the desktop computer. Regardless of whose recollection was correct, there is no dispute one of the computers was searched and that several images of what appeared to be child pornography were found.

 Washington County Circuit Court, the Honorable Andrew T. Gonring presided.

 Purtell's motion to suppress raised a second argument in the alternative. Purtell argued that if the circuit court determined Agent Anderson did have reasonable grounds to search the computer's contents, the evidence should still be suppressed because a police detective had improperly viewed and catalogued the evidence before obtaining a search warrant. This issue has not been raised on appeal.

 Wisconsin probation regulations permit a probation agent to search a probationer's property "if there are reasonable grounds to believe that the quarters or property contain contraband . . .." Wis. Admin. Code § DOC 328.21(3)(a).

 "Contraband" is defined in the Wisconsin Administrative Code as "[a]ny item which the client may not possess under the rules or conditions of the client's supervision," Wis. Admin. Code § DOC 328.16(l)(a), or "any item whose possession is forbidden by law." § DOC 328.16(l)(b).

 Purtell challenges the search of his computer under both the United States and Wisconsin Constitutions. This court has ordinarily interpreted the protections of the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution as coextensive. State v. Artic, 2010 WI 83, ¶ 28, 327 Wis. 2d 392, 786 N.W.2d 430 (citing State v. Johnson, 2007 WI 32, ¶ 20, 299 Wis. 2d 675, 729 N.W.2d 182). For the sake of efficiency, this opinion will expressly address only Purtell's Fourth Amendment challenge, but we note our analysis applies to Article I, Section 11 of the Wisconsin Constitution as well.

 Purtell argues that this issue is not properly before this court because the constitutionality of the search was not raised by the State in its petition for review. See Motion to Strike State's Brief Because It Addresses An Issue Not Raised In Its Petition For Review (Motion to Strike), filed Dec. 20, 2013. In our order granting the State's petition for review, we stated, "the plaintiff-respondent-petitioner may not raise or argue issues set forth in the petition for review unless otherwise ordered by this court."
Once this court has accepted review of a case, however, it is within our "discretion to review any substantial and compelling issue the case presents." Chevron Chem. Co. v. Deloitte & Touche, 176 Wis. 2d 935, 945, 501 N.W.2d 15 (1993). Whether the search of Purtell's computer satisfied the reasonableness requirement of the Fourth Amendment is a substantial issue that is dispositive to the question of whether the circuit court's denial of Purtell's suppression motion was proper. Further, the question of whether Agent Anderson had reasonable grounds to believe that Purtell's computer contained contraband has been thoroughly argued and briefed by the parties at every stage of litigation in this case. Therefore, we find it is appropriate to reach the underlying merits presented and consider whether the search of Purtell's computer violated his Fourth Amendment rights.

 Legal scholars have critiqued courts for deciding probation search cases under a "constructive custody" rationale, arguing that by stating in conclusory fashion a probationer is in "custody" while outside of prison, they create a legal fiction that ignores the numerous ways in which a probationer's life is far more akin to that of an ordinary citizen's than a prisoner's. See 4 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 10.10(a) (5th ed. 2012). To clarify, we do not use the term "legal custody" to equate the Fourth Amendment rights afforded to a probationer with those afforded a prisoner. Instead, we merely recognize probationers are in the "legal custody" of the State because, unlike ordinary citizens, *229 they are still subject to State supervision to ensure successful reintegration into the community, lawful conduct, and public safety.

 In United, States v. Stevens, 559 U.S. 460, 482 (2010), the United States Supreme Court held that a federal statute prohibiting the creation, sale, or possession of depictions of animal cruelty violated the First Amendment.

 The dissent cites to several cases which stand for the proposition that the seizure of an electronic device is distinct from a subsequent search of its contents. Dissent, ¶¶ 41-48; see also Riley v. California, 134 S. Ct. 2473 (2014) (addressing the warrantless search of the contents of the defendant's cell phone following his arrest); State v. Sobczak, 2013 WI 52, 347 Wis. 2d 724, 833 N.W.2d 59 (discussing whether a third party's consent for law enforcement to search the defendant's home could validate the officer's subsequent search of the defendant's laptop); State v. Carroll, 2010 WI 8, 322 Wis. 2d 299, 778 N.W.2d 1 (reviewing the validity of a warrantless search of the contents of an arrestee's cell phone). Our case involves a probationer— who is already subject to diminished privacy interests — and the search of contraband that he knowingly possessed in violation of the terms of his probation. The cases cited by the dissent, while interesting, are of minimal assistance to our analysis.

 To be constitutional, conditions must be designed to assist "the convicted individual in conforming his or her conduct to the law," and not be overly broad. Rowan, 341 Wis. 2d at ¶ 10. As we explained in Rowan,
[a] condition is reasonably related to a person's rehabilitation if it assists the convicted individual in conforming his or her conduct to the law. It is also appropriate for circuit courts to consider an end result of encouraging lawful conduct, and thus increased protection of the public, when determining what individualized probation . .. conditions are appropriate for a particular person.
Id. (citations and footnotes omitted). As previously noted, Purtell does not challenge the propriety of the condition that he not own, possess, or use a personal computer.

 The court of appeals misstated Purtell's condition of probation as prohibiting him from "own[ing] or possessing] a computer and that he could only use a computer 'at his place of business or school.' " Purtell, No. 2012AP1307CR, ¶ 2. This *235 condition, which was stated in Purtell's judgment of conviction, was originally imposed by the Dane County Circuit Court. Agent Anderson testified at the suppression hearing that, after Purtell was transferred to Washington County, the circuit court left it to her discretion whether the condition be modified or removed.

 A factor that probation agents are instructed to consider in determining whether to search a probationer's property is *236 "[t]he activity of the client that relates to whether the client might possess contraband ...." Wis. Admin. Code § DOC 328.21(7)(e).

 Two additional factors that probation agents are instructed to consider prior to conducting a search are "[t]he experience of a staff member with that client or in a similar circumstance," Wis. Admin. Code § DOC 328.21(7)(g), and "[t]he need to verify compliance with rules of supervision and state and federal law," Wis. Admin. Code § DOC 328.21(7)(i).

 Agent Anderson's expertise with animal cruelty cases corresponds to Wis. Admin. Code § DOC 328.21(7)(g), which lists ”[t]he experience of a staff member with that client or in a similar circumstance," as a factor in determining whether reasonable grounds exist to search a probationer's belongings.

 The author of the 2006 presentence investigation report ordered by the Dane County Circuit Court expressed concern that Purtell viewed the two dogs he abused as "human," in that he believed the dogs could make a conscious decision to reject him.
Agent Anderson was also aware that Purtell's histoiy of torturing animals stemmed back to childhood. She testified that she had spoken directly with Purtell's mother regarding Purtell's childhood, and was informed that Purtell, as a child, had "disciplined" a family pet and injured the animal to such a degree they never had animals in the home again.

 Purtell's conduct can be properly considered by Agent Anderson under Wis. Admin. Code § DOC 328.21(7)(e), describing "[t]he activity of the client that relates to whether the client might possess contraband" as a factor in determining whether reasonable grounds exist to justify a search.

 The prior seizure of Purtell's computers is a relevant consideration for Agent Anderson under Wis. Admin. Code § DOC 328.21(7)(h), which provides that "[pjrior seizures of contraband from the client" is pertinent in establishing reasonable grounds for searching a probationer's property. This is an especially germane fact here, given that the search of the seized computer's contents is at issue.

 Purtell's comments to the group home coordinator relate to three factors probation agents are instructed to consider prior to searching a probationer's property: "[t]he observations of staff members," Wis. Admin. Code § DOC 328.21(7)(a), "[t]he experience of a staff member with that client," § DOC 328.21(7) (g), and "the need to verify compliance with the rules of supervision and state and federal law," § DOC 328.21(7)(i).

 We read Agent Anderson's testimony in the suppression hearing as providing an ample foundation for believing the contents of Purtell's computers contained contraband. However, to the extent Agent Anderson's subjective intent to search Purtell's computer was motivated by concern he might possess still images of animal cruelty or mutilation, which was the basis for the court of appeals' decision, we conclude that stated objective by Agent Anderson does not impact the lawfulness of the search. The Supreme Court has repeatedly held that a police *238 officer's motive does not invalidate "objectively justifiable behavior under the Fourth Amendment." Whren v. United States, 517 U.S. 806, 813 (1996) ("[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.") (internal quotation marks omitted). See also State v. Sykes, 2005 WI 48, ¶ 29, 279 Wis. 2d 742, 695 N.W.2d 277 (holding the actual motivation of an officer does not determine the constitutionality of a stop).

 The dissent argues that "correspondence with underage girls" is not contraband under the terms of Purtell's probation. Dissent, ¶ 53. Perhaps the dissent overlooks the terms of Purtell's probation, which clearly provide that Purtell is prohibited from having any unsupervised contact with children.
We take issue with the dissent's constrictive interpretation of "item" under the statutory definition of contraband, Wis. Admin. Code § DOC 328.21. We fail to see a meaningful difference between a probation officer having reasonable grounds to believe property contains a tangible "item" establishing illegal conduct and reasonable grounds to believe property contains intangible evidence of illegal conduct. Under the dissent's unduly narrow interpretation of the relevant statutes, a probation officer would not have reasonable grounds to search a probationer's property even if he or she was certain the property contained evidence of the probationer's non-compliance with the terms of his or her probation. Such an interpretation is contrary to the dual purposes of the Fourth Amendment "special needs" exception, in that it would run the risk of endangering the public and state employees, as well as hinder the rehabilitation of probationers.

 Under the terms of his probation, Purtell was "prohibited from maintaining a Myspace.com account." The dissent objects that "[t]his condition addresses an action rather than possession of an item. A prohibited action does not fall within the definition of contraband." Dissent, ¶ 54. If possession of an account — whether it be a social media account, a bank account, a web page, or a line of credit — is prohibited by an individual's *239 probationary terms, violation of that term surely constitutes the possession of "contraband." The dissent's characterization of social media accounts fails to embrace the reality of our increasingly digitized modern era. Simply because an "account" cannot be held in one's hand, does not mean it does not exist.
The dissent also argues that Agent Anderson did not need to search Purtell's computer because she "could check his Myspace activity 'separately because she had his password and had done that on her own without the computers.' " Id. This fails to account for the possibility that Purtell had multiple Myspace accounts that had not been disclosed to his probation officer and would be viewable in his computer's web history.